ESTATE OF RAY E. TOMPKINS, DECEASED, STELLA TOMPKINS, WALLA WALLA, WASHINGTON, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20728. Promulgated December 22, 1949.

*George W. Thompson, Esq.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: The respondent determined a deficiency in estate tax in the amount of $11,106.29. Several adjustments were made in the estate tax return which are not controverted. The questions presented for our consideration are, first, whether respondent erred in adding to the gross estate $40,271.33 representing the value of a one-half interest in the assets of a partnership of which the decedent was a member at the time of his death, and $1,500 representing the value of growing crops on land leased by the decedent.

The principal facts are set out in a written stipulation of facts which we incorporate herein by reference. The facts pertaining to the first issue are in substance as follows:

The decedent, Ray E. Tompkins, died December 15, 1944, and his widow, Stella Tompkins, was named executrix of his estate. The decedent was a resident of Umatilla County, Oregon, and his estate tax return was filed with the collector of internal revenue for the district of Oregon.

At the time of his death, and for several years prior thereto, the decedent was an equal partner with Michael R. Nibler in a business of treating and cleaning peas, wheat, and other grains, handling and selling farm implements and equipment, and operating a gasoline service station. On the date of decedent's death, December 15, 1944, the partnership assets had a fair market value of $86,993.67, exclusive of the insurance policies on the lives of the partners.

The partnership was formed by a written agreement dated December 3, 1941. Under that agreement and a supplemental agreement dated January 24, 1944, the parties agreed that the firm should acquire and pay the premiums on insurance policies in the amount of $25,000 on the life of each of the partners, payable to the surviving partner, and that the surviving partner should have the right of purchasing the deceased partner's share of the partnership assets for $25,000. Such policies were taken out in accordance with the partnership agreement. Policies of the face amount of $15,000, taken out under the supplemental agreement of January 24, 1944, on the life of each partner, carried double indemnity provisions in the case of accidental death.

The material part of the original agreement dated December 3, 1941, reads as follows:

It Is Further Understood and Agreed that the business shall pay as part of the operating cost the premiums for $10,000.00 life insurance policies to be carried upon the life of each partner, payable to the surviving partner; and it is specifically understood and agreed that in the event of the death of either partner the survivor shall become the sole owner of all of the assets of the

partnership upon the payment of the sum of $10,000.00 to the estate of the deceased partner. Upon becoming the sole owner of the partnership assets and business, the surviving partner shall assume responsibility for all obligations of the partnership business.

It Is Further Understood and Agreed that the surviving partner shall, upon the payment of the aforementioned sum, retain the life insurance policy upon his life as part of the assets of the partnership business and shall own the same free and clear of any claims of the heirs of the deceased partner.

The agreement of December 3, 1941, was amended by a supplemental agreement entered into January 24, 1944, whereby the amount of insurance on the lives of the partners was increased from $10,000 to $25,000. In other respects the original agreement remained in force and effect.

The right to change the beneficiary of each of the policies was reserved to the insured under the standard provisions of the policy contracts.

All premiums on the policies were paid by the partnership and charged to partnership expenses.

The decedent was killed in an accidental fall on December 15, 1944. By reason of his accidental death the proceeds of the insurance policies which the partnership carried on his life amounted to $40,271.33. That amount was paid to the surviving partner, Nibler, the sole beneficiary, who, in the exercise of his option under the partnership agreements, paid the entire amount to the decedent's estate in exchange for decedent's interest in the partnership assets. While the agreements were that the deceased partner's interest might be purchased by the surviving partner for $25,000, Nibler construed them as requiring him to pay over the entire amount of the insurance proceeds to the decedent's estate.

The estate tax return filed on behalf of decedent's estate included the entire amount of the insurance, $40,271.33, in the value of the gross estate, but did not include any value for the decedent's interest in the partnership assets. The respondent, in determining the deficiency, increased the gross estate by $40,271.33 representing the book value of decedent's share in the partnership assets, that is, $43,496.84, reduced to $40,271.33 by reason of the option agreement.

The stipulated facts on the remaining issue are as follows:

On the date of his death, the decedent was occupying and operating certain farm property in the State of Oregon under an annual lease agreement. The acreage had been cultivated and planted in wheat about October 10, 1944. The land had been sown with an early harvest crop of peas during the summer of 1944 from which a voluntary growth reappeared with the wheat planted in the fall of 1944. In February or March, 1945 the wheat and interspersed peas growth were ploughed under and a new crop of wheat thereafter was planted.

No value was placed on the said growing crop in the Federal estate tax return filed by the petitioner herein and the said growing wheat crop was valued by the respondent in the amount of $1,500.00, as of December 15, 1944.

Substantially the same question as here presented under the first issue was considered by this Court in *Boston Safe Deposit & Trust Co. et al., Executors*, 30 B. T. A. 679; *M. W. Dobrzensky, Executor*, 34 B. T. A. 305; and *Estate of John T. H. Mitchell*, 37 B. T. A. 1. In the *Boston Safe Deposit & Trust Co.* case it was held that the proceeds of insurance policies on the life of a deceased partner, which, under a preexistent agreement between the partners, were to be applied, and were applied, as part of the consideration for the transfer of the insured's interest in the partnership to the surviving partners, were not included in the gross estate as "insurance received by the executor under a policy taken out by the decedent upon his own life," within the meaning of section 302 (g) of the Revenue Act of 1926, which corresponds to section 811 (c) of the code. Respondent there sought to include in the gross estate not only such insurance proceeds, but also the full value of the deceased partner's interest in the partnership assets.

The question again arose in *M. W. Dobrzensky, Executor, supra*, in which we held, modifying *Boston Safe Deposit & Trust Co. et al., Executors, supra*, that there should be included in the gross estate under section 302 (g) all of the proceeds of insurance policies on the deceased partner's life which, under a partnership agreement, the decedent's estate was required to accept in part payment for the deceased partner's interest in the partnership assets, but not the portion of the partnership assets which the decedent had relinquished in exchange for the proceeds of the insurance policies. We said in that case:

In the case of *Boston Safe Deposit & Trust Co. et al., Executors*, 30 B. T. A. 679, the Government attempted to include in the decedent's gross estate, not only the value of decedent's partnership interest, but also the proceeds of a policy of life insurance having a status substantially similar to the last four policies with which we are here concerned. We properly held that such would result in unjustifiable double taxation.

It is apparent the result there reached was correct, but that the theory supporting it was wrong. The rationale of the *Igleheart* case, *supra*, [28 B. T. A. 888; affd., 77 Fed. (2d) 704] was controlling there as well as here. The double taxation feature does not make it less so. Decedent acquired the insurance policy there involved by purchase or exchange. The consideration therefor was decedent's relinquishment of certain rights in partnership property. After that acquisition decedent no longer had any right, at his death, in the relinquished assets, but, instead, had a taxable interest in an insurance policy. Obviously, the decedent could not be taxed with an asset, as his own, at death, and, at the same time, taxed with the consideration he relinquished for that asset. But, we there sustained the inclusion of the value of the assigned partnership interest which was the consideration decedent paid or exchanged for the insurance policy, and excluded from decedent's gross estate, the proceeds of that policy which was the asset he thus acquired. This was error. The proceeds of the insurance policy,

in full, were includable in decedent's gross estate there within the provisions of section 302 (g) of the Revenue Act of 1926, which is applicable here. *Edgar A. Iglehart et al., Executors, supra.* However, since decedent had relinquished certain partnership interests in exchange for the insurance asset purchased, only the value of his remaining partnership interests, at his death, was includable in his gross estate. On the record there before us, the value of the remaining partnership interest was the amount by which the value of decedent's full partnership interest, at his death, exceeded the amount of the proceeds of the insurance policy.

In *Estate of John T. H. Mitchell, supra,* we reached the same result on facts substantially like those in the *Dobrzensky* case, saying:

However, such insurance proceeds were received by decedent's estate subject to the terms of a valid and binding contract that they be applied to reduce the purchase price to be paid by Lennen for the decedent's 900 shares of Lennen & Mitchell, Inc., stock which by the same contract Lennen was obligated to buy. Those shares, being so burdened, were not subject to the unfettered ownership of the decedent's estate. The effect of the contract was to reduce the value of the estate's interests in such stock by an amount equal to the amount of the proceeds of the insurance policy, and the value of the stock as so reduced must be deemed as its value for estate tax purposes. Cf. *Wilson v. Bowers,* 57 Fed. (2d) 682; *M. W. Dobrzensky, Executor,* 34 B. T. A. 305, 312; *Edith M. Bensel et al., Executors,* 36 B. T. A. 246, and authorities cited therein. * * *

In the instant case the parties are in agreement that the full amount of the proceeds of the policies of insurance on decedent's life must be included in the gross estate. They differ only as to whether there should also be included one-half of the value at the date of decedent's death of the partnership assets. The actual value of such one-half interest, it is stipulated, was $43,496.84, or some $3,000 more than the insurance proceeds.

For the reasons advanced in the cited cases, we think that the respondent's position is unsound. At the time of, and after, decedent's death his interest, or the interest of his estate, in the partnership assets was limited under the partnership agreements to the amount of the proceeds of the policies of insurance on his life. It was error for the respondent to include in the estate both the insurance proceeds and the value of the partnership assets.

On the second issue the stipulated facts, which comprise all the evidence before us, afford no basis for setting aside the respondent's determination that the growing crop of wheat on the land leased by the decedent had a value of $1,500 at the time of his death. The wheat had been sown on the land about October 10, 1944. Decedent's death occurred December 15, 1944. The crop was not ploughed under and replanted to a new crop of wheat until "February or March, 1945." There is no evidence that it was adjudged worthless or that, in fact, it was worthless at the date of decedent's death. On the facts before us, the respondent's determination on this issue is sustained.

*Decision will be entered under Rule 50.*